UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN PENA,

                Plaintiff,

-against-

DOWNSTATE CORRECTIONAL FACILITY
MEDICAL DEPARTMENT; NYS
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION,

                Defendants.

1:19-CV-7336 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

    Plaintiff, currently incarcerated in the Bare Hill Correctional Facility, brings this *pro se* action asserting that the defendants have violated his federal constitutional rights. He sues the Downstate Correctional Facility's Medical Department ("Downstate Medical Department") and the New York State Department of Corrections and Community Supervision ("DOCCS"). He seeks $100,000 in damages. The Court construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983.

    By order dated February 3, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP").[1] For the reasons set forth below, the Court dismisses this action, but grants Plaintiff leave to replead.

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

Plaintiff originally filed this action without paying the relevant fees or filing an IFP application and prisoner authorization. On August 28, 2019, the Court directed him to either pay the fees or submit an IFP application and prisoner authorization. But because he failed to comply, on October 8, 2019, the Court dismissed this action without prejudice. Plaintiff then filed an IFP application and a notice of appeal. On December 4, 2019, the Court vacated its previous order and judgment, and granted Plaintiff 30 days to either pay the relevant fees or file a prisoner authorization. Plaintiff filed a prisoner authorization on January 6, 2020. In an order

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The United States Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual

---

dated December 9, 2019, and issued as a mandate on March 10, 2020, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's appeal, effective December 30, 2019, because of Plaintiff's failure to file an Acknowledgment and Notice of Appearance form in the Second Circuit. *Pena v. Downstate Corr. Facility*, No. 19-3916 (2d Cir. Dec. 9, 2019).

detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff makes the following allegations: Between April and June 2019, Plaintiff was incarcerated in the Downstate Correctional Facility. Upon his arrival at Downstate, and over a period of two days, he underwent medical-assessment examinations by Downstate's medical staff. One of the rooms in which he was examined did not have a ceiling connected to its walls, "allowing the conversation [he had with medical staff] to be heard by the inmate in the next room." (ECF 1, at 6.) He gave blood and urine samples, and Downstate medical staff took his vital signs "in a large opened [sic] room [where he] was seen by other inmates and staff." (*Id.*)

Plaintiff also underwent X-ray examinations in which the examination-room door remained open. In addition, the door remained open while he changed into a gown and during his physical examination – parts of Plaintiff's body were exposed and the physician examined Plaintiff's testicles.

Plaintiff asserts that the defendants violated his rights to privacy and against cruel and unusual punishment, as well as his rights under the Health Insurance Portability and Accountability Act ("HIPAA"). He also asserts that the defendants failed to inform him of his right to refuse the medical examinations.

## DISCUSSION

A.  **The Eleventh Amendment**

Plaintiff's claims under 42 U.S.C. § 1983 against DOCCS and the Downstate Medical Department are barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted).

Congress has not abrogated the States' immunity for claims under § 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). DOCCS and a New York State prison's medical department, such as the Downstate Medical Department, are arms of the State of New York, and therefore enjoy Eleventh Amendment immunity from suit under § 1983. *See, e.g.*, *Madison v. New York State Dep't of Corrs*. No. 19-CV-3401, 2019 WL 4933594, at *1-2 (S.D.N.Y. Oct. 4, 2019) (DOCCS); *Orr v. Hoke*, No. 91-CV-1256, 1995 WL 217541, at *4 (S.D.N.Y. Apr. 12, 1995) (New York State prison's medical department). The Court therefore dismisses Plaintiff's § 1983 claims

against DOCCS and the Downstate Medical Department under the doctrine of Eleventh Amendment immunity.[2]

B. **Confidentiality of medical information**

The Court must dismiss Plaintiff's claims under § 1983 arising from the alleged disclosure of Plaintiff's medical information to prisoners and others. Prisoners retain a limited federal constitutional right to the confidentiality of their medical information. *See Powell v. Schriver*, 175 F.3d 107, 111-13 (2d Cir. 1999). But this right applies only when a person's medical information involves a medical condition that is both serious and "would expose a person . . . to *discrimination* and *intolerance.*" *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 67 (2d Cir. 2011) (emphasis in original, internal quotation marks omitted, citation omitted); *Powell*, 175 F.3d at 111-12.

Plaintiff fails to allege facts suggesting that the medical information that he discussed with a physician during his initial medical examinations at Downstate involved a serious medical condition that, if disclosed, could expose him to discrimination and intolerance. He does not specify the nature of the medical information he discussed. Accordingly, he fails to state a claim that Downstate officials violated his federal constitutional right to maintain the confidentiality of his medical information. The Court therefore dismisses Plaintiff's claims under § 1983 in which he asserts such a violation for failure to state a claim on which relief may be granted.

---

[2] *See also Zuckerman v. Appellate Div., Second Dep't, Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court is not a "person" for the purpose of § 1983 liability); *see generally Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding that a state agency is not a "person" for the purpose of § 1983 liability).

**C.     Medical-examination privacy**

Downstate officials did not violate Plaintiff's federal constitutional rights when they allegedly failed to examine Plaintiff in private. This is because the Constitution does not guarantee that a medical examination of a prisoner must be conducted in private. *See Rodriguez v. Heit*, 9:16-CV-0706, 2018 WL 3121626, at *6 (N.D.N.Y. Mar. 30, 2018) (correction officer's presence in a prison's medical examination room and a nurse's statements to the correction officer in that room during a prisoner's medical examination did not violate the prisoner's right to privacy), *report & recommendation adopted*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018), *appeal dismissed*, No. 18-2844, 2019 WL 4780772 (2d Cir. Feb. 27, 2019), *cert. denied*, 140 S. Ct. 561 (2019); *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 219 (W.D.N.Y. 2003) ("The Eighth Amendment's right to be free from cruel and unusual punishment does not guarantee that plaintiff will receive any and all medical care in total privacy. . . . [And] [t]he fact that plaintiff's cellmate also was present [for his medical examination] is not sufficiently shocking or egregious as to amount to a constitutional violation [of substantive due process]."). The Court therefore dismisses these claims under § 1983 for failure to state a claim on which relief may be granted.

**D.     Medical screening of prisoners**

The Second Circuit has held that a correctional facility's staff's failure to medically screen incoming prisoners violates the federal constitutional rights of those prisoners already held in that facility. *See Lareau v. Mason*, 651 F.2d 96, 109 (2d Cir. 1981). "[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (citing *Lareau*, 651 F.2d at 109-11). And the State of New York has a "compelling interest in administering an effective [medical] screening program." *Id.* at 478. Thus, courts have allowed prison officials to conduct mandatory medical screenings.

*See Boreland v. Vaughn*, No. 92-CV-0172, 1993 WL 62707, at *4 (E.D. Pa. Mar. 3, 1993), *aff'd*, 22 F.3d 300 (3d Cir. 1994) (table decision).

Some courts have recognized that a prisoner may be exempt from medical screenings when such screenings conflict with the prisoner's religious beliefs. *See Jolly*, 76 F.3d at 474-82 (affirming district court's grant of a prisoner's application for a preliminary injunction arising from his confinement in "medical keeplock" after the prisoner refused tuberculosis screening on religious grounds); *Selah v. Goord*, 255 F. Supp. 2d 42, 52-56 (N.D.N.Y. Apr. 4, 2003) (granting preliminary injunction against a prisoner's confinement in a "tuberculin hold" after the prisoner refused tuberculosis screening on religious grounds); *Reynolds v. Goord*, 103 F. Supp.2d 316, 337-45 (S.D.N.Y. 2000) (same).

Plaintiff alleges that it has been his "experience that . . . private doctors are more thorough than the doctors at [Downstate], the process is more professional, and [he] felt more comfort [with private doctors]." (ECF 1, at 8.) He asserts that prison officials did not inform him of his right to refuse a medical screening. He states that if he had known that he could refuse, he would have refused the examination of his testicles because that part of the examination was, in his opinion, "invasive." (*Id.* at 9-10.) But that is not a recognized reason for a prisoner to be exempt from medical screening. And Plaintiff has articulated no other reason, religious or otherwise, why he would have refused medical screening. Accordingly, the Court dismisses Plaintiff's claims under § 1983 that arise from his having to undergo medical examinations upon his arrival at Downstate for failure to state a claim on which relief may be granted.

### E.     HIPAA

The Court must further dismiss any claims Plaintiff asserts under HIPAA. This is because HIPAA provides no private right of action. *E.g.*, *Henry v. Doe*, No. 19-CV-10153, 2020 WL 209091, at *9 (S.D.N.Y. Jan. 10, 2020); *see Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 n.

2 (2d Cir. 2015) (summary order) (noting that "[i]t is doubtful that HIPAA provides a private cause of action at all," and that "[t]he Circuits that have considered the issue agree that HIPAA creates no private right of action"). The Court therefore dismisses Plaintiff's claims under HIPAA for failure to state a claim on which relief may be granted.

## CONCLUSION

This order is to be mailed in chambers.

The Court dismisses this action for failure to state a claim on which relief may be granted and for seeking monetary relief from defendants that are immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). But the Court grants Plaintiff leave to file an amended complaint, in which he states a plausible claim for relief, within 30 days of the date of this order. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment dismissing this action for failure to state a claim on which relief may be granted and for seeking monetary relief from defendants that are immune from such relief. *See id.*

SO ORDERED.

Dated: March 25, 2020
New York, New York

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.