UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/4/2022
```

JUAN PENA,

                              Plaintiff,

        -against-

ROBERT MORTON, JR. and OLAYEMI
ODENIYI,

                              Defendants.

19-cv-07336 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Juan Pena ("Plaintiff"), proceeding *pro se*, commenced this action on August 5, 2019.  (ECF No. 1.)  He alleges violation of the First Amendment against Robert Morton, Jr. and Olayemi Odeniyi (together, "Defendants") based on a medical examination he alleges violated his religious beliefs.  (ECF No. 24.)  Presently before the Court is the Defendants' motion to dismiss the third amended complaint.  (ECF No. 39.)  For the following reasons, the Defendants' motion is GRANTED.

## BACKGROUND

        The following facts are taken from Plaintiff's Third Amended Complaint ("TAC") and opposition,[1] and are construed in the light most favorable to Plaintiff and accepted as true for purposes of this motion.

        From April through June of 2019, Plaintiff was incarcerated at Downstate Correctional Facility ("Downstate").  (TAC ¶ 1.)  Robert Morton, Jr. is the superintendent of Downstate and "is

---

[1] "While a court generally 'may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss . . . the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials . . . .'" *Brown v. New York City Hous. Auth.*, No. 05-CV-10332(VM), 2006 WL 1378599, at *1 n.2 (S.D.N.Y. May 17, 2006) (quoting *Burgess v. Goord*, No. 98-CV-2077(SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999)).

responsible for the medical procedures and practices that are employed by the medical staff." (*Id*. ¶ 15.)  Odeniyi is a nurse practitioner.  (*Id*. at 3.)  During his incarceration, Plaintiff was required to undergo a medical assessment by the facility's medical staff.  (*Id*. ¶ 1.)  Part of the assessment involved a physical examination and Plaintiff was assigned Odeniyi[2].  (*Id*. ¶ 7; Plaintiffs' Answer to Defendants' Motion to Dismiss Third Amended Complaint ("Opp.") ECF No. 38 at 1.)  Plaintiff is a Muslim man and believes the Qur'an prevents him from exposing or allowing the opposite sex to touch his awrah, the area of his body between the navel and the knees.  (TAC ¶¶ 5; 12.)  Plaintiff objected to being examined by Odeniyi and stated his religion forbid a member of the opposite sex from viewing or touching his awrah, but his objection was ignored.  (*Id*.; Opp. at 1.)  Plaintiff was instructed to put on a gown that had an opening in the back.  (TAC ¶ 8.)  During the examination, Plaintiff was directed to lift up the gown and lower his boxers so Odeniyi could examine his testicles, which she placed in her hands.  (*Id*. ¶ 9; Opp. at 1.)  Plaintiff was also instructed to stand and bend at the waist so Odeniyi could examine his back, exposing him.  (TAC ¶ 10.)  The door to the examination room remained open during the examination, and other male inmates and staff were able to observe.  (*Id*. at 5; ¶ 11.)  Plaintiff alleges Morton received complaints from other Muslim inmates related to the female medical staff, he but refused to rectify the issue.  (Opp. at 2.)

Plaintiff filed suit on August 5, 2019.  (ECF No. 1.)  On March 25, 2020, Judge Louis L. Stanton, *sua sponte*, dismissed Plaintiff's complaint and granted him leave to file an amended complaint.  (ECF No. 13.)  Plaintiff filed an Amended Complaint on May 7, 2020 (ECF No. 14), which Judge Stanton, *sua sponte*, dismissed on June 8, 2020 with leave to file a second amended complaint (ECF No. 15.)  Plaintiff filed a Second Amended Complaint on July 10, 2020.  (ECF

---

[2] While identified as "Jane Doe, M.D." in the TAC, Plaintiff's opposition makes clear that Jane Doe is Odeniyi.  (Opp. at 1.)

No. 16.)  The case was reassigned to this Court on August 6, 2020.  The Court then issued an Order

of Service directing Plaintiff to file a third amended complaint (ECF No. 18), which was filed on

November 10, 2020.  (ECF No. 24.)  On February 1, 2021, the Court granted Defendants leave to

file a motion to dismiss (ECF No. 35) which was filed on April 19, 2021 (ECF No. 39.)  Plaintiff

filed an opposition on April 5, 2021 (ECF No. 38.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement

to relief." *Id.* at 679.  While the Court must take all material factual allegations as true and draw

reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a

legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or

"[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting

*Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to

nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A

motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly

liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Further, courts must interpret a

*pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of

New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted).  Nevertheless, a *pro se*

plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

Plaintiff's TAC alleges a violation of the First Amendment pursuant to Section 1983.[3] Defendants allege that (i) the TAC fails to plead the personal involvement of Morton; (ii) the TAC

---

[3] Plaintiff also appears to be asserting that his right to privacy was violated as the door to the examination room remained open during his examination. (TAC ¶ 11.) However, as discussed in Judge Stanton's previous Order of Dismissal, "the Constitution does not guarantee that a medical examination of a prisoner must be conducted in private." (ECF No. 13 at 6) (citing *Rodriguez v. Heit*, 9:16-CV-0706, 2018 WL 3121626, at *6 (N.D.N.Y. Mar. 30, 2018) *report & recommendation adopted*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018)). Therefore, to the extent Plaintiff is reasserting this claim, it is dismissed.

4

fails to allege that Plaintiff's First Amendment rights were violated because his awrah was only briefly exposed during the examination; and (iii) Defendants are entitled to qualified immunity. The Court will address each below.

## I.   First Amendment

The Free Exercise Clause of the First Amendment states, "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S Const. amend. I.  Prison inmates are protected by the clause, though not necessarily to the same extent as others.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives.").  To state a free exercise claim, a plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006).  "[A] substantial burden exists where the state 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (citing *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).

Even if a plaintiff can establish the defendants substantially burdened his right to exercise, the defendants can avoid liability by showing "the disputed official conduct was motivated by a legitimate penological interest."  *Salahuddin*, 467 F.3d at 276.  The plaintiff must then show that these penological interests were "irrational."  *Id*. at 275.  The Court must balance the defendants' interest against the inmate's First Amendment right to freely exercise his religion.  *Johnson v. Guiffere*, No. 9:04-CV-0057 (DNH/DEP), 2007 WL 3046703, at *6 (N.D.N.Y. Aug. 10, 2007). The "determination is 'one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right . . . is reasonably related to legitimate penological interests.'" *Id.*  In making this evaluation, courts must evaluate four factors:

> [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin*, 467 F.3d at 275.  "Post hoc justifications with no record support will not suffice." *Id*. at 277.

Here, Defendants are not disputing that Plaintiff's religious beliefs are sincere or that his beliefs were substantially burdened.  Instead, they are alleging that they had legitimate penological interests in requiring Plaintiff to expose his awrah during his medical examination, including to assess his health, control the spread of germs, provide necessary treatment, and determine if more extensive examinations are necessary.  (Defendants' Memorandum of Law in Support Motion to Dismiss Third Amended Complaint ("Mem.") ECF No. 40 at 6.)  While all of these interests appear to have a valid and rational connection to Plaintiff's examination, they are not reasonably related to the denial of Plaintiff's rights.

First, allowing inmates like Plaintiff to be seen by medical professionals that are male is a clear and very simple way to accommodate their religious beliefs.  Defendants' legitimate interests do not require inmates like Plaintiff to be submitted to exams by female physicians.  Nor do Defendants provide any explanation as to why Plaintiff could not be examined by a male physician during his examination.  As Plaintiff notes, this was a "routine medical assessment" and not an exigent situation that would require more flexibility.  (TAC ¶ 13.)  Second, this accommodation would not appear to have a substantial impact on guards, inmates, or prison resources.  It would only require prisons to employ at least one male medical professional that could be tasked with handling the examinations of devout Muslim inmates.  Lastly, this accommodation would clearly have, at most, a de minimis adverse effect on valid penological interests.  It is in the facility's

6

interests to have healthy inmates and providing at least one male professional to assist with medical tasks would only support these interests.

Defendants aver that courts within this Circuit have upheld the constitutionality of stripping Muslim inmates down to their underwear in the presence of female officers.  (Mem. at 7.) However, these cases are clearly distinguishable from the Plaintiff's and others where inmates were completely exposed or forced to undergo a routine examination.  *See Simmons v. Williams*, No. 6:14-cv-111, 2017 WL 3427988, at *15–16 (S.D. Ga. Aug. 9, 2017) *report and recommendation adopted*, No. 6:14-cv-111, 2017 WL 4162176 (S.D. Ga. Sept. 20, 2017) (holding that the defendants violated the plaintiff's First Amendment rights when they dragged him into the presence of other inmates and guards while his private area was exposed by translucent boxer shorts); *Forde v. Baird*, 720 F. Supp. 2d 170, 176–77 (D. Conn. 2010) (holding the defendants' policy of allowing non-emergency cross-gender pat searches violated the plaintiff's free exercise of Islam under the Religious Freedom Restoration Act of 1993).  Strip searches are a common part of prison life and are conducted regularly to further the facility's legitimate interests in safety.  In contrast, routine medical exams are likely done once a year, if that, and may be rescheduled at any time barring an exigency.  Further, strip searches require inmates to strip down so the officer can confirm they are not hiding any contraband.  They generally do not include having a female officer closely examine and touch the testicles or backside of inmates, which is a more invasive procedure.

Defendants also allege that a Muslim plaintiff in a different case stated that there was an exception to the prohibition on exposing his awrah for medical treatment.  *See Lindh v. Warden, Fed. Corr. Inst., Terre Haute, Ind*., No. 14 Civ. 00142, 2016 WL 4528478, *4 (S.D. Ind. Aug. 30, 2016) ("Exceptions to this prohibition exist for showing the *awrah* to one's spouse, for medical

treatment, or for other circumstances of necessity.").  However, there is no reason for this Court to believe Plaintiff abides by these same exceptions while practicing his faith.

Defendants also aver that Plaintiff fails to allege the personal involvement of Superintendent Morton.  (Mem. at 5.)  "It is well settled that . . . to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Further, "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*. 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, Plaintiff alleges broadly that Morton "is responsible for the medical procedures and practices that are employed by the medical staff" and that he knew of complaints from other Muslim inmates regarding female medical staff viewing and touching their "intimate parts."  (TAC ¶ 15; Opp. at 2.)  These allegations fall below the required showing, as Plaintiff has not alleged a single act committed by Morton that contributed to or resulted in his alleged constitutional violation.  *See Smart v. Annucci*, No. 19-CV-7908 (CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [the defendants] failed to act on Plaintiff's complaints . . . cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'") (quoting *Tangreti*, 983 F.3d at 615).

Accordingly, Defendant Morton's motion to dismiss this claim is granted, and Defendant Odeniyi's motion to dismiss this claim is denied.[4]

---

[4] The Court interprets Plaintiff's TAC to only be bringing a claim for violation of the First Amendment. While Plaintiff describes his legal basis as a violation of his Eighth Amendment right to be free from cruel and unusual punishment (TAC at 2), his statement of facts and argument in the TAC as well as his opposition to the motion to dismiss both focus on the First Amendment.  However, if Plaintiff did intend to bring an Eighth

## II.      Qualified Immunity

The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, (2011).  As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct."  *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted).  To determine whether a right was clearly established, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) "the understanding of a reasonable officer in light of preexisting law."  *Id*. at 231.

In this Circuit, "a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment."  *Sledge v. Bernstein*, No. 11 Civ. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012).  "Not only must the facts supporting the defense appear on the face of the complaint, . . . but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) and quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).  "[T]he plaintiff is entitled to all reasonable

---

Amendment claim, it would fail as Plaintiff has failed to show a "sufficiently serious" deprivation that would consist of cruel or unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Specifically, for an inmate to show he received medical care that consists of a constitutional violation, he or she must show (1) that he or she had an objectively "serious medical need" and (2) that the defendant "act[ed] with a sufficiently culpable state of mind" and was deliberately indifferent to his or her suffering. *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).  Here, Plaintiff's claim fails at the first prong, as he has not alleged any sufficiently serious medical conditions.  *See K.A. v. City of New York*, 413 F. Supp. 3d 282, 297–98 (S.D.N.Y. 2019) (denying motion to dismiss Eighth Amendment claim where plaintiffs requested female healthcare providers and, when denied, had to face sexual abuse and exacerbated pre-existing medical conditions).

inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id*.

Here, Odeniyi alleges she is shielded by qualified immunity as there is no controlling authority from the Supreme Court or Second Circuit holding that it is unconstitutional for a female medical professional to perform a medical assessment on a Muslim male. (Mem. at 9.)  The Court agrees.  The parties have not cited—and the Court has not found—any Supreme Court or Second Circuit precedent establishing the particular conduct in this case is a constitutional violation.  *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality . . . The dispositive question is whether the violative nature of particular conduct is clearly established" and "must be undertaken in light of the specific context of the case, not as a broad general proposition") (internal citations and quotation marks omitted); *see also Woodward v. Perez*, No. 12 CV. 8671(ER), 2014 WL 4276416, at *7 (S.D.N.Y. Aug. 29, 2014) (holding qualified immunity applied where there was no Supreme Court or Second Circuit precedent that established the right for a Muslim inmate not to shower in the presence of a female guard or homosexual inmate); *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502(JPO)(SN), 2013 WL 1129813, at *9 (S.D.N.Y. Mar. 19, 2013) ("no case law from the United States Supreme Court or the Second Circuit Court of Appeals supports the theory that it violates a Muslim inmate's constitutional rights to be searched in his underwear in the presence of a female officer") (internal quotation marks omitted).  Therefore, Odeniyi is entitled to qualified immunity.

### III.    Leave to Amend

"The Second Circuit has instructed courts not to dismiss a complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Howard v. Brown*, No. 15 Civ. 9930 (ER), 2018 WL 3611986, at

*6 (S.D.N.Y. July 26, 2018) (quoting *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013)).  Here,

Plaintiff has been provided with multiple opportunities to plead his claims.  (ECF Nos. 14; 16; &

24.)  Further, in his Order of Dismissal dated June 8, 2020, Judge Stanton stated that the Court

would provide Plaintiff "one more opportunity" to allege sufficient facts to state a First

Amendment free exercise claim.  (ECF No. 15.)  Therefore, *pro se* Plaintiff's claims must be

dismissed with prejudice without leave to replead.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion is GRANTED.  The Clerk of the Court

is directed to terminate the motion at ECF No. 39, to enter judgment accordingly, and to close the

case.  The Clerk of the Court is moreover directed to mail a copy of this Opinion and Order to *pro*

*se* Plaintiff at his address listed on ECF and file proof of service on the docket.


Dated:  March 4, 2022                                                    SO ORDERED:

     White Plains, New York

                                              _____

                                                  NELSON S. ROMÁN

                                     United States District Judge